**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. PAMELA KIBBONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 1468 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BOARD OF EDUCATION OF TAFT | ) | |
| SCHOOL DISTICT 90, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Dr. Pamela Kibbons, the former superintendent and principal of Taft School District 90 ("Taft"), sued her employer, the Board of Education of Taft ("the Board"), and Anthony Peloso, the Board President (collectively, "Defendants"), after her employment at Taft ended in June 2018. Kibbons claims that Defendants subjected her to a hostile work environment and constructively discharged her from her job because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Counts 1 and 2); that the Board breached its employment contract with her (Count 3); and that Peloso subjected her to intentional infliction of emotional distress ("IIED") (Count 4). The Court has before it Defendants' motion for summary judgment as well as Kibbons' objections to Magistrate Judge McShain's order denying her motion for sanctions.

The Court grants Defendants' motion for summary judgment on all of Kibbons' claims because she failed to substantively respond to any of Defendants' arguments in her responsive brief, and because there is no material dispute of fact that would allow a reasonable jury to find in Kibbons' favor on any of her claims.

With respect to Kibbons' objections to the magistrate judge's order denying her motion for sanctions, the Court agrees with the magistrate judge's determination that her motion was untimely. The Court, therefore, affirms the magistrate judge's order.

## BACKGROUND[1]

Taft, a single-building school district, serves children between the grades of kindergarten and eighth grade. In 2016, in part due to financial troubles, Taft decided to hire someone who could fill the dual role of superintendent/principal. Ultimately, Taft selected Kibbons, who has a doctorate in Education, to fill the position. Kibbons and Taft entered into an employment contract for the 2016–2017 and 2017–2018 school years. The contract entitled Kibbons to an annual salary of $135,000, additional benefits that Taft would fund, and contributions to the Teachers Retirement System. Throughout the duration of the contract, Taft performed its obligations in full.

As a superintendent/principal, Kibbons had responsibility for the day-to-day management of the school, which a principal would ordinarily perform, as well as the building maintenance, fundraising, and public-facing duties of a superintendent. Kibbons attended and participated in open and closed sessions of the Board's meetings, as well as worked with individual Board members, including Peloso, the Board's president.

At times, Peloso interacted with Kibbons outside of the Board meeting context in ways she felt were unpleasant or harassing. Several times between September 2016 and November 2016, Peloso invited Kibbons to go to the cemetery across the street from the school to have a

---

[1] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The Court takes these facts in the light most favorable to Kibbons, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

drink.  Between September 2016 and June 2017, Peloso would frequently enter Kibbons' office

to work on his laptop and perform Taft-related work such as signing checks on the Board's

behalf.  Kibbons testified that he would sit there for long periods and watch her work.  Finally,

Peloso twice instructed Kibbons to climb a ladder to reach the school's roof to ostensibly address

issues he had about the roof's condition.  On one of these instances, Kibbons was wearing high-

heeled shoes and a skirt, and she felt it embarrassing to have to climb a ladder above Peloso

while so dressed.  Although Kibbons could not recall exactly when the ladder incidents occurred,

she stated they both took place "in the fall."  Doc. 177-4 at 98:8.

In the performance of her duties as superintendent, Kibbons hired two mechanics to

perform necessary plumbing maintenance on one of the school's boilers.  Kibbons authorized

them to receive a total of $425 for their services.  During the Board's closed meeting session on

November 15, 2017, Peloso took issue with this decision.  According to the meeting's minutes,

Peloso raised his voice towards her and shouted, "Do you understand what I am saying! Do you

get that through your head! What I am saying! Do you get that through your head! Jesus

Christ!!"  Doc. 189-17 at 2.

Months later, on April 23, 2018, Kibbons formally declined the outstanding contract

renewal offer and stated that she "will be resigning, effective June 30, 2018, in which [she] will

complete [her] two year contract."  Doc. 177-10 at 1.  Although Kibbons expressed her intent to

leave Taft on May 23, 2018, to use her accrued benefit time, she ultimately remained on staff

into the month of June 2018.

On November 9, 2018, Kibbons filed a charge with the United States Equal Employment

Opportunity Commission ("EEOC") for alleged harassment, retaliation, and constructive

discharge.  The EEOC issued a right to sue letter on November 30, 2018, and Kibbons filed this case on February 28, 2019.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018).  "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014).  The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Wehrle*, 719 F.3d at 842. However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not

those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I.     Defendants' Motion for Summary Judgment

#### A.     Hostile Work Environment

The Court begins with Kibbons' hostile work environment claim. In her complaint, Kibbons identified three incidents that she claimed created a hostile work environment due to Peloso sexually harassing her. First, Kibbons points to Peloso's repeated invitations to drink with him in a cemetery across the street from the school, which the parties agree must have occurred between September 2016 and November 2016. Second, Kibbons identifies Peloso's lengthy visits to her office where he would allegedly sit and watch her work, which the undisputed evidence shows occurred between September 2016 and June 2017. Third, Kibbons claims that on two occasions "in the fall," Doc. 177-4 at 98:8, Peloso asked her to climb a ladder to examine the roof while she was wearing a skirt and high heels as Peloso watched from below.

Defendants argue that Title VII's 300-day statute of limitations bars Kibbons' hostile work environment claim, and that the undisputed facts would not allow a reasonable jury to find in her favor at trial. Kibbons did not raise or argue any issues related to the statute of limitations in her response brief. In their reply, Defendants argue that Kibbons' failure to address their statute of limitations argument results in waiver of this claim. The Court agrees that Kibbons did not address Defendants' arguments, meaning that she waived this claim. *Cf. Huang v. Cont'l Cas. Co.*, No. 11 C 1049, 2012 WL 104628, at *7 (N.D. Ill. Jan. 12, 2012) ("In his response brief, plaintiff does not address any of defendant's arguments relating to plaintiff's failure-to-

5

promote claim, or indeed make any mention of this claim. The court concludes that plaintiff has abandoned this claim as well.").

Moreover, even if Kibbons did not abandon this claim, Defendants are correct that Title VII's statute of limitations bars Kibbons from seeking relief for a hostile work environment based on the conduct she identifies. "EEOC charges must be brought on Title VII claims within 300 days of an alleged violation." *Sraieb v. Am. Airlines, Inc.*, 735 F. Supp. 2d 837, 840 (N.D. Ill. 2010) (citing 42 U.S.C. §2000e-5(e)(1)). However, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Kibbons filed her EEOC charge on November 9, 2018. Thus, she only has a viable claim if she can identify at least one act that occurred between January 12, 2018, and November 9, 2018, which would then open the door to earlier instances of harassment.

The undisputed facts show that all of the incidents that Kibbons identifies in her complaint or her brief opposing summary judgment either occurred or must be inferred to have occurred by December 31, 2017 at the latest, making Kibbons' claim time-barred. With respect to Peloso's invitations for Kibbons to join him for a drink in the cemetery across the street, his last such advance occurred sometime in November 2016, well before January 12, 2018. With respect to Peloso's allegedly harassing visits to Kibbons' office, his last such visit occurred in June 2017, which is also prior to January 12, 2018. The only events with an ambiguous end date—Peloso's alleged attempts to put Kibbons in a position where he could look up her skirt— occurred sometime "in the fall" per Kibbons' sworn testimony. Doc. 177-4 at 98:8. A reasonable jury must construe this to refer to the fall of 2016 or 2017, because Kibbons'

6

employment began in July 2016 and ended in June 2018. Even if a reasonable jury were to liberally construe "in the fall" as encompassing a date as late as December 31, 2017, it still would not fall within the required period for Kibbons' claim to survive a statute of limitations defense because at least one instance of Peloso's allegedly harassing conduct must have occurred after January 12, 2018. Accordingly, the Court finds that Kibbons' sexual harassment claim is untimely because she failed to identify any violating conduct that falls within Title VII's 300-day statute of limitations. *See Sraieb*, 735 F. Supp. 2d at 840 ("EEOC charges must be brought on Title VII claims within 300 days of an alleged violation.").

The Court therefore grants Defendants summary judgment on Kibbons' hostile work environment claim.

### B. Constructive Discharge

Defendants next move for summary judgment on Kibbons' claim that they constructively discharged her from her position as superintendent. "An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable." *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). There are two ways a plaintiff can show that her employer constructively discharged her:

> In the first form, an employee resigns due to alleged discriminatory harassment. Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit. . . . .
>
> The second form of constructive discharge we have recognized occurs when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated. In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge. This form of constructive discharge, however, does not eliminate the

> need for the plaintiff to show that his working conditions had become intolerable. And a working condition does not become intolerable or unbearable merely because a prospect of discharge lurks in the background.

*Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (quotations and citations omitted).

Defendants argue that no reasonable jury could find that Kibbons experienced "working conditions even more egregious than that required for a hostile work environment claim," *id.*, and that the fact that Defendants offered Kibbons a contract extension, which remained open for over a year before Kibbons declined it, forecloses any argument that they pushed Kibbons out of her job. Kibbons makes a brief direct response to Defendants arguments, asserting that "[t]hings got so bad for [her] at [Taft] that she tendered her letter of declination of an extension on her contract and resignation" and that "[s]he only left after she completed the two years on her contract." Doc. 186 at 13. Defendants argue in their reply brief that Kibbons abandoned her constructive discharge claim because this response failed to meaningfully address their arguments.

Once more, the Court agrees. Kibbons' scattered response brief invites the Court to tie disjointed factual assertions with under-developed arguments to construct a clear version of her rebuttal argument: courts generally decline such invitations. *See, e.g.*, *Harper v. Dart*, No. 13 C 9265, 2014 WL 13113665, at *1 (N.D. Ill. Aug. 5, 2014) ("The Court will not do a party's legal research for it nor make a party's arguments for it." (citation omitted)), *Bling v. Matrix Packaging Mach. LLC*, No. 21 C 1399, 2022 WL 17251983, at *10 (E.D. Wis. Nov. 28, 2022) ("It is not the duty of the Court to refine and flesh out an argument which the proffering litigant has failed to develop."); *see also Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("declin[ing] the invitation" to develop an argument that appellant did not fully present).

Kibbons does no work to tie the extensive evidentiary record to her argument against granting summary judgment and fails to direct the Court's attention to any relevant caselaw supporting her claims.[2]  Accordingly, the Court finds that she waived her constructive discharge claim.  *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("Accordingly, because [plaintiff] failed to properly present the issue to the district court in response to [defendant's] motion for summary judgment, that issue is waived."), *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Even if the Court did not find that Kibbons waived this claim by failing to respond to Defendants' arguments, it would still grant Defendants' motion for summary judgement on this claim.  One avenue available for Kibbons to advance her constructive discharge claim beyond summary judgment is to identify evidence that raises a material dispute of fact as to whether she suffered "working conditions even more egregious than that required for a hostile work environment claim [while working at Taft]."  *Chapin*, 621 F.3d at 679.  Kibbons cannot clear that high bar.  As the Court can best identify, Kibbons' allegations relevant to her constructive discharge claim relate to Peloso's alleged misconduct at a Board meeting on November 15, 2017, where he "yelled at [Kibbons] for" paying two mechanics a combined total of $425 to make plumbing repairs, shouting, "Do you understand what I am saying! Do you get that through your head! What I am saying! Do you get that through your head! Jesus Christ!!"  Doc. 186 at 6 (quoting Doc. 189-17 at 2).  Kibbons then states that she "was convinced that she had been constructively discharged when all other board members sat quietly and did not intervene when

---

[2] The lone case Kibbons cites in her argument, *Reger Development, LLC v. Nat'l City Bank*, 592 F.3d 759 (7th Cir. 2010), is a commercial breach of contract case where the "main question . . . [was] whether the [promissory note at issue] entitle[d] [appellee] to demand payment from [appellant] at will."  *Id.* at 762.  It has no applicability to the constructive discharge argument Kibbons attempts to make.

they observed Anthony Peloso's unethical, unsafe and unprofessional behavior [at the November 15, 2017 Board meeting] toward her." *Id.* at 7. She further argues that "[t]hings got so bad for [her] at [Taft] that she tendered her letter of declination of an extension on her contract and resignation. She only left after she completed the two years on her contract." *Id.* at 13. Beyond this, Kibbons does not make any specific arguments or point to specific evidence regarding the working conditions she testified that she suffered during her employment at Taft. Kibbons' unfortunate experience as the subject of Peloso's ire, while certainly unpleasant, does not suffice to show "working conditions even more egregious" than those necessary to show a hostile work environment. *Cf. Chapin*, F.3d at 679 ("One threat and raised voices would not rise to the level of a hostile work environment, and so it also cannot be the basis for Chapin's constructive discharge claim."); *see also Pa. State Police v. Suders*, 542 U.S. 129 (2004) (constructive discharge occurred where plaintiff was sexually harassed, denied promotions, and endured retaliatory acts such as false arrest); *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (constructive discharge possible where harassment included repeated use of noose and implied threats of violence); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (jury could find constructive discharge when employer constantly made racist comments, brandished a pistol, and held it to one plaintiff's head).

Nor could Kibbons succeed under the second theory of constructive discharge. For Defendants to have constructively discharged her under this route, they must have "act[ed] in a manner so as to have communicated to [Kibbons] that she will be terminated." *Chapin*, 621 F.3d at 679. But Defendants communicated no such thing, either through their words or actions. Rather, they offered her a contract extension that remained open for over a calendar year until Kibbons ultimately declined to sign it. Kibbons does not point to any evidence in the record

10

indicating that this offer was a sham or that Defendants somehow pressured her to reject the offer.  Accordingly, the Court finds that Kibbons has failed to identify a dispute of material fact that would allow a reasonable jury to find that Taft constructively discharged her under this theory.  *See Brown*, 38 F.4th at 549 (non-movant must present evidence showing material dispute of fact allowing jury to find in her favor to survive summary judgment).

The Court grants Defendants summary judgment on Kibbons' constructive discharge claim.

### C.      Breach of Contract

Turning to Kibbons' breach of contract claim, Kibbons appears to base her breach of contract claim in her amended complaint on similar allegations as her constructive discharge claim.  *See* Doc. 37 ¶ 131 ("Because of the intentional, discriminatory, harassing, and malicious actions of [] Peloso as set out in the facts of this Complaint, Superintendent Kibbons found continued employment at Defendant Taft [] impossibly unbearable, was constructively discharged, and tendered her resignation.").  To bring a breach of contract claim under Illinois law, Kibbons must show (1) a valid, enforceable contract; (2) her substantial performance under the contract; (3) a breach or breaches the defendant(s) committed; and (4) damages.  *See W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759 (2004).  Defendants argue that Kibbons cannot show that the Board breached any of its duties or that Kibbons suffered injury as the result of any breach.  Kibbons did not respond to the Board's arguments regarding her breach of contract claim in her brief.  As such, Kibbons abandoned it.  *See Harper*, 433 F.3d at 528 ("Accordingly, because [plaintiff] failed to properly present the issue to the district court in response to [defendant's] motion for summary judgment, that issue is waived.").

Even if the Court did not find waiver on Kibbons' part, the Board is entitled to summary judgment on her breach of contract claim because she cannot point to any evidence that would suggest that the Board actually breached the contract. The undisputed facts show that Kibbons served both years of her contract and that the Board paid her salary of $135,000, provided her with benefits, and made contributions to the Teachers Retirement System as governed by the parties' agreement. Kibbons does not identify in her brief a specific term of the contract that the Board breached, nor does she point to evidence that would support such an allegation. In the absence of either of these elements, Kibbons' claim cannot survive. *See W.W. Vincent & Co.*, 351 Ill. App. 3d at 759 (conduct by defendant breaching contract is a necessary element to state a breach of contract claim).

The Court grants the Board summary judgment on Kibbons' breach of contract claim.

**D.    IIED**

Finally, Peloso moves for summary judgment on Kibbons' IIED claim. A plaintiff bringing an IIED claim under Illinois law must show that (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). To "qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (quoting *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274 (2003)). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct, nor does conduct 'characterized by malice or a degree of aggravation which would entitle the

12

plaintiff to punitive damages for another tort.'" *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 89–90 (1976)).  Courts are reluctant "to find [IIED] in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action." *Richards*, 869 F.3d at 566.

Although Defendants concede that Peloso shouted at Kibbons during the November 15, 2017 Board meeting, they argue that this outburst does not constitute the sort of conduct that creates liability for IIED.  Instead, Defendants posit that Peloso's actions were "simply everyday job stresses resulting from discipline or personality conflicts, and fall[] squarely in the category of permitted conduct."  Doc. 176 at 13–14.  Kibbons does not respond to Defendants' argument: indeed, the phrase "intentional infliction of emotional distress" does not appear in her brief at all. As such, the Court finds that Kibbons abandoned her IIED claim against Peloso.  *See Huang*, 2012 WL 104628, at *7 ("In his response brief, plaintiff does not address any of defendant's arguments relating to plaintiff's failure-to-promote claim, or indeed make any mention of this claim.  The court concludes that plaintiff has abandoned this claim as well.").

Even if Kibbons did not abandon this claim, the Court would still grant Peloso summary judgment on it.  Although Peloso's uncourteous words and conduct may have frightened and insulted Kibbons, and Peloso may even have acted maliciously towards her, no reasonable jury could find him liable for IIED based on the outburst.  *See, e.g.*, *Richards*, 869 F.3d at 567–68 (summary judgment on IIED claim appropriate for the defendant when evidence showed "comments about [plaintiff's] lack of workplace competency," an "insulting remark about [plaintiff's] weight," and uninvited physical conduct); *see also Van Stan*, 125 F.3d at 568

13

("Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." (collecting cases)); *cf. Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006) (IIED found where employer's actions against plaintiff included "forcing [her] to climb up an unstable metal stairway to hook up computer equipment during her pregnancy; sabotaging [her] computer to deny her access and alter her files; publicly criticizing [her] work during meetings with other supervisors; moving her office and her transportation files, causing her to be unable to locate necessary paperwork; and increasing the amount of work due under the PIPs, knowing that [she] would not be able to meet the deadlines"). Accordingly, the Court grants Peloso summary judgment on Kibbons' IIED claim.

The Court, thus, grants Defendants' motion for summary judgment and enters judgment for Defendants on Kibbons' amended complaint.

## II. Kibbons' Objections to Magistrate Judge McShain's Denial of Sanctions

The Court now turns to Kibbons' objections to Judge McShain's order denying Kibbons' motion for sanctions related to Defendants' alleged misconduct during discovery. *See* Doc. 219. Although Defendants urge the Court to review her order under a deferential "clearly erroneous" standard, Doc. 224 at 3, the Court believes *de novo* review is more appropriate. *See Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) (holding that district courts must review "all sanctions requests, whether pre- or post-dismissal," *de novo*). The Court thus takes Judge McShain's June 3, 2024 order "as a report and recommendation" to which it must give "fresh consideration." *Rajaratnam v. Moyer*, 47 F.3d 922, 925 n.8 (7th Cir. 1995).

Kibbons moved for sanctions against Defendants on April 17, 2024, approximately six weeks after the parties fully briefed Defendants' motion for summary judgment and about eight-and-a-half months after discovery closed. Kibbons had foreshadowed making such a motion in a

14

joint status report dated October 16, 2023, *see* Doc. 172, to which Judge McShain noted some

preliminary skepticism, *see* Doc. 174 (expressing "significant concerns about plaintiff's intention

to file this sanctions motion" in part because "it is unclear why plaintiff intends to seek discovery

related sanctions now, more than two months after the fact discovery cutoff and presumably even

longer after the underlying misconduct that defendants allegedly engaged in").  In her motion,

Kibbons complained of Defendants' alleged "[d]iscovery [v]iolations, their failure to preserve

and produce ESI evidence, their failure to fulfill [d]iscovery [r]equests, their inappropriate and

obstructive behavior before and during depositions, their dishonest statements to the [c]ourt and

opposition counsel, and their failure to observe [t]he Local Rules [r]equiring [m]eet and [c]onfer

among lawyers."  Doc. 210 at 1–2.

      Judge McShain summarized the contents of Kibbons' motion in her order:

> Despite the breadth of its title and its length (41 pages and more
> than 300 pages of exhibits), the motion is nothing more than a
> laundry list of plaintiff's counsel's grievances with how defendants
> and their attorneys have comported themselves during the
> discovery process and a rehashing of multiple discovery disputes
> that plaintiff brought and lost–some on multiple occasions.  For
> example, plaintiff's counsel devotes large chunks of the motion to
> his complaints about (1) the need to reschedule Anthony Peloso's
> deposition, (2) whether defendants adequately searched for
> responsive documents to plaintiff's ten sets of document requests
> (three of which the undersigned quashed due to relevance and
> proportionality problems), (3) the circumstances that led to the
> filing of a Freedom of Information Act request regarding plaintiff's
> employment after she left Taft School District, (4) defense
> counsel's decision to obtain a declaration from witness Gina
> McCauley, rather than producing her for a deposition,
> (5) McCauley's conduct at her ensuing deposition, where she
> allegedly "displayed uncontrollable anger" and "stomped out of the
> room" while being questioned by plaintiff's counsel, and (6) what
> plaintiff's counsel perceives to be lingering questions about the
> identity of the author(s) of one of plaintiff's annual performance
> evaluations.  Plaintiff's counsel also recaps the events that
> precipitated the filing of her failed motions to compel (and her
> three baseless motions to reconsider the denial of that motion), and

> to impose artificial limits on defense counsel's ability to raise attorney-client privilege objections–a motion so lacking in justification that plaintiff was sanctioned for filing it. Thereafter, plaintiff's counsel devotes the final 13 pages of the motion to quoting at length from different cases where a litigant has been sanctioned for a discovery violation without explaining what bearing those cases have on this motion–or even identifying with specificity the conduct that counsel believes warrants sanctions or even what sanctions plaintiff is requesting.

Doc. 219 at 2–3 (citations omitted). Ultimately, Judge McShain found that Kibbons' motion was untimely. *See id.* at 3. She noted that despite the fact that discovery had long-closed and that she had previously expressed skepticism about a motion for sanctions, Kibbons "ignored that issue[] and offered no explanation for why the motion was filed so long after the fact discovery cutoff— let alone why it was filed so long after the allegedly sanctionable misconduct." *Id.* Finally, while Judge McShain "construed the motion as requesting non-dispositive discovery sanctions" that did not require a report and recommendation under Federal Rule of Civil Procedure 72, she alternatively "respectfully recommend[ed] that the District Judge deny the motion because it is untimely." *Id.* at 4.

In her objections, Kibbons fails to address Judge McShain's decision that her motion was untimely, instead submitting an oversized brief that addresses irrelevant areas of law and throws block quotations from other cases at the Court, with no effort to show how the precedent is relevant to her objections to the magistrate judge's recommendation. For example, her objections open with a summary of the court's opinion in *Pope v. Taylor*, 100 F.4th 918 (7th Cir. 2024), which upheld the district court's decision to conditionally grant a Wisconsin prisoner's habeas corpus petition. How this case is relevant to her objections to Judge McShain's order, Kibbons does not say. Once more, Kibbons' non-responsive briefing results in waiver: this time, to any appeal she may have had from Judge McShain's well-reasoned order. *See Johnson v.*

16

*Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If a party objects in the district court on some issues and not others, [s]he waives appellate review of the issues to which [s]he has not objected.").

Even if Kibbons had properly addressed Judge McShain's untimeliness finding, the Court would nevertheless affirm it on its own review because Kibbons has no explanation for why she sat on Defendants' alleged discovery violations for over eight-and-a-half months prior to filing her motion. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (finding that "unreasonable delay may render" a motion for discovery sanctions untimely).

Accordingly, the Court denies Kibbons' objections to Judge McShain's order and finds that the magistrate judge properly denied her motion for sanctions as untimely.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [175] and enters judgment for Defendants on Kibbons' amended complaint. The Court denies Kibbons' objections to the Magistrate Judge's order denying her motion for sanctions [221]. The Court terminates this case.

Dated: September 10, 2024

_____
SARA L. ELLIS
United States District Judge